IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA,

v.                                                                22-CR-38-WMS

AMANDA J. GLORIA,

            Defendant.

## PLEA AGREEMENT

    The defendant, AMANDA J. GLORIA, and the United States Attorney for the Western District of New York and the United States Department of Justice, Criminal Division, Fraud Section (hereinafter "the government"), hereby enter into a plea agreement with the terms and conditions as set out below.

## I.    THE PLEA AND POSSIBLE SENTENCE

    1.    The defendant agrees to waive indictment and to plead guilty to a two-count Information which charges:

    a)    in Count 1, a violation of Title 18, United States Code, Section 1349 (conspiracy to commit bank fraud), for which the maximum possible sentence is a term of imprisonment of 30 years, the greater of a fine of $1,000,000 or twice the gross gain or twice the gross loss from the offense, a mandatory $100 special assessment and a term of supervised release of 5 years; and

b)     in Count 2, a violation of Title 18, United States Code, Section 1957 (engaging in a monetary transaction with criminally derived proceeds), for which the maximum possible sentence is a term of imprisonment of 10 years, a fine of $250,000 or twice the amount of the criminally derived property involved in the transactions, whichever is greater, a mandatory $100 special assessment and a term of supervised release of 3 years.

c)     The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2.     The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 5 years, without credit for time previously served on supervised release.  As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II.     ELEMENTS AND FACTUAL BASIS

3.     The defendant understands the nature of the offenses set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crimes:

**Count 1**

a.     Two or more persons, in some way or manner, agreed to accomplish a common and unlawful plan to commit a federal fraud crime, namely, bank fraud, in violation of Title 18, United States Code, Section 1344, as alleged in the Information; and

2

b.      The defendant knew the unlawful purpose of the plan and willfully joined it.

## Count 2

a.      The defendant knowingly engaged in a monetary transaction that affected interstate commerce;

b.      The monetary transaction was of a value greater than $10,000;

c.      The monetary transaction involved criminally derived property;

d.      Criminally derived property was derived from specified unlawful activity;

e.      The defendant knew that the monetary transaction involved criminally derived property; and

f.      The monetary transaction took place within the United States.

## FACTUAL BASIS

4.      The defendant and the government agree to the following facts, which form the

basis for the entry of the plea of guilty, including relevant conduct:

### The Paycheck Protection Program

a.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 designed to provide emergency financial assistance to millions of Americans suffering economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program (PPP). In or about April 2020, Congress authorized over $300 billion in additional PPP funding.

    i.      To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which had to be signed by an authorized representative of the business. The loan application required the business—through its authorized representative—to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the loan application, the small business must state, among other things, its average monthly payroll expenses and number of employees.

These figures were used to calculate the amount of money the business was eligible to receive under the PPP.  In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

ii.      A PPP loan application had to be processed by a participating lender. If a loan application was approved, the participating lender funded the loan using its own money, which is 100% guaranteed by U.S. Small Business Administration (the "SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

iii.     PPP loan proceeds had to be used by the business on certain permissible expenses such as payroll costs, interest on mortgages, rent, and utilities.  The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business used the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

iv.      To qualify for a PPP loan, every application was required to certify that the business seeking the loan "was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC."

### *The Charges*

b.       From at least in or around May 2020 through at least in or around June 2021, in the Western District of New York and elsewhere, the defendant, **AMANDA J. GLORIA**, did knowingly and willfully combine, conspire, and agree with Adam D. Arena ("Arena") and others, known and unknown to the United States of America, to commit bank fraud in violation of Title 18, United States Code, Section 1344, that is, to knowingly and with intent to defraud, execute and attempt to execute a scheme and artifice to defraud at least 12 financial institutions, namely, Bank-1 through Bank-12, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of the respective financial institution, by means of materially false and fraudulent pretenses, representations, and promises, all in violation of Title 18, United States Code, Section 1349.

4

c.      In addition to conspiring to commit bank fraud, on or about September 22, 2020, in the Western District of New York and elsewhere, the defendant, **AMANDA J. GLORIA**, knowingly engaged and attempted to engage in a monetary transaction, affecting interstate commerce, by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, as described below, such property having been derived from a specified unlawful activity, namely, bank fraud, in violation of Title 18, United States Code, Sections 1344, all in violation of Title 18, United States Code, Sections 1957 and 2.

### *ADA Auto Group*

d.      In or around May 2020, from within the Western District of New York, Arena reinstated his previously inactive business, ADA Auto Group LLC ("ADA Auto Group"), which had been inactive since in or around 2018.  Similarly, in or around May 2020, GLORIA reinstated her previously inactive business, WildWest Trucking LLC ("WildWest Trucking"), which had been inactive since in or around 2017.  Arena then provided his date of birth, social security number, address, and ADA Auto Group's Employer Identification Number (EIN), Articles of Incorporation, along with a bank account number, to a co-conspirator for the purpose of facilitating the preparation of a fraudulent Paycheck Protection Program (PPP) loan.

e.      On or about July 27, 2020, GLORIA submitted a PPP loan application for ADA Auto Group to Bank-1 via email seeking a $954,000 loan. Bank-1 was a "financial institution" pursuant to Title 18, United States Code, Section 20 because it was a bank insured by the Federal Deposit Insurance Corporation.  Bank-1 was also a participating PPP lender with the Small Business Administration.  In support of the application, GLORIA knowingly submitted four quarterly Form 941 filings and a Form 940 filing for ADA Auto Group for 2019, all of which were false.

f.      On or about August 6, 2020, GLORIA knowingly submitted to Bank-1 five false and fraudulent documents purporting to be payroll reports for ADA Auto Group.  These tax forms and payroll reports were materially false and fraudulent because Arena's company, ADA Auto Group, was not operating in 2019.  Additionally, these documents falsely and fraudulently claimed that ADA Auto Group employed 50 people in 2019 with an annual payroll of more than $4.4 million.

g.      On or about August 10, 2020, from within the Western District of New York, Arena directed Bank-1 to wire the proceeds of the approved PPP loan for ADA Auto Group into a business account controlled exclusively by him at Bank-13.

h.    On or about August 13, 2020, from within the Western District of New
      York, Arena electronically signed and submitted the closing loan
      documents to Bank-1 using a third-party electronic platform. Among
      other things, these documents contained a materially false certification
      that the PPP loan proceeds would be used only for specified
      business-related expenses.

i.    On or about August 14, 2020, in reliance on the false certification,
      among other things, Bank-1 transferred the PPP loan proceeds,
      $954,000, into ADA Auto Group's business account controlled
      exclusively by Arena at Bank-13.

j.    After the approximately $954,000 in PPP loan proceeds were transferred
      to this account, GLORIA directed Arena to conduct at least one
      financial transaction of a value greater than $10,000 from within the
      Western District of New York.

k.    On or about September 22, 2020, in the Western District of New York
      and elsewhere, GLORIA knowingly engaged in a monetary transaction
      by, through, and to a financial institution, affecting interstate
      commerce, in criminally derived property of a value greater than
      $10,000.  This transaction involved criminally derived proceeds,
      specifically derived from bank fraud. Specifically, GLORIA transferred
      and caused to be transferred approximately $24,135 from Bank-13 into
      an account controlled by GLORIA for WildWest Trucking at Bank-14
      by depositing a check that was drawn from the fraudulently obtained
      PPP funds in ADA Auto Group's account at Bank-13. GLORIA knew
      that this check was written and sent by Arena to GLORIA from within
      the Western District of New York and that this transfer had no business-
      related purpose, but instead was payment for GLORIA's role in
      facilitating the submission of the fraudulent PPP loan application to
      Bank-1.

l.    None of the $954,000 PPP loan proceeds to ADA Auto Group funded
      by Bank-1 were used by GLORIA or Arena for business-related
      expenses, nor did GLORIA or Arena ever intend to use these funds for
      business-related expenses.

*WildWest Trucking*

m.    On or about June 29, 2020, a PPP loan application was submitted on
      GLORIA's behalf to Bank-1 seeking an approximately $421,000 PPP
      loan for WildWest Trucking (the "WildWest Application"), an entity
      owned and incorporated by GLORIA. GLORIA personally aided and
      assisted in the preparation of the WildWest Application, which was
      submitted with various supporting documents, including what

purported to be a true copy of an IRS "Form 940" filing for tax year 2019.  The Form 940 filing claimed that WildWest Trucking had paid approximately $1.9 million in wages to its employees during the 2019 tax year.  This Form 940 was false, however, in that the Oklahoma Secretary of State confirmed that WildWest Trucking was inactive from 2017 through 2019.   GLORIA  knew the  WildWest Application contained false and fraudulent information, knew that it was submitted to Bank-1 on her behalf, and intended to use the proceeds not only for business-related expense, but to enrich herself personally.

n.     On or about July 31, 2020, the WildWest Application was approved, and Bank-1 loaned WildWest Trucking approximately $421,000. Bank-1 deposited the loan proceeds into WildWest Trucking's business account at Bank-14, an account which was exclusively controlled by GLORIA.

### Relevant Conduct: Additional PPP Loans

o.     From at least in or around May 2020 through at least in or around June 2021, the defendant, **AMANDA J. GLORIA**, submitted, and conspired with others to submit, at least 153 fraudulent PPP loan applications to Bank-1 through Bank-12 on behalf of at least 111 entities, including ADA Auto Group and WildWest Trucking.  A list identifying each of these loans is attached hereto as Appendix A.  This list includes: the name of the beneficiary entity; the financial institution where the loan application was submitted; the loan amount sought and the date the loan was funded, if it was funded.  On each of the identified loan applications, GLORIA falsified or aided and assisted with falsifying, various information, including the number of employees, payroll expenses and documentation, and federal tax filings.  Thereafter, GLORIA submitted, or aided and assisted with the submission of, the applications to a financial institution. Based on the false and fraudulent representations contained in the application materials prepared or submitted by GLORIA, GLORIA intended to fraudulently obtain a total of approximately $43.8 million in PPP funds, and in fact fraudulently obtained approximately $32.5 million in PPP funds from Bank-1 through Bank-12.  From those fraudulently obtained funds, GLORIA personally received at least approximately $1.7 million.

### III.   SENTENCING GUIDELINES

5.     The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

## COUNT 1
## BASE OFFENSE LEVEL

6.      The government and the defendant agree that Guidelines §§ 2B1.1(a)(1) and

2X1.1(a) apply to the offense of conviction and provides for a base offense level of 7.

## SPECIFIC OFFENSE CHARACTERISTICS
## U.S.S.G. CHAPTER 2 ADJUSTMENTS

7.      The government and the defendant agree that the following specific offense

characteristics do apply:

    a.      the 22-level increase pursuant to Guidelines § 2B1.1(b)(1)(L) (the loss, including relevant conduct, was between $25 million and $65 million, with an intended loss of approximately $43.8 million and an actual loss of approximately $32.5 million);

    b.      the 2-level increase pursuant to Guidelines § 2B1.1(b)(2)(A)(i) (offense involved more than ten victims);

    c.      the 2-level increase pursuant to Guidelines § 2B1.1(b)(10)(C) (offense involved sophisticated means); and

    d.      the 2-level increase pursuant to Guidelines § 2B1.1(b)(17)(A) (the defendant derived more than $1,000,000 in gross receipts from one or more financial institutions).

## COUNT 1
## U.S.S.G. CHAPTER 3 ADJUSTMENTS

8.      The government and the defendant agree that the following adjustment to the

base offense level does apply:

    a.      the 3-level increase pursuant to Guidelines § 3B1.1(b) (aggravating role in offense).

8

## COUNT 1
## ADJUSTED OFFENSE LEVEL

9.      Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offense of conviction is 38.

## COUNT 2
## BASE OFFENSE LEVEL

10.     The government and the defendant agree that Guidelines § 2S1.1(a)(1) applies to the offense of conviction and provides for a base offense level of 35.

## SPECIFIC OFFENSE CHARACTERISTICS
## U.S.S.G. CHAPTER 2 ADJUSTMENTS

11.     The government and the defendant agree that the following specific offense characteristic does apply:

  a.      the 1-level increase pursuant to Guidelines § 2S1.1(b)(2)(A) (conviction under 18 U.S.C. § 1957)

## COUNT 2
## U.S.S.G. CHAPTER 3 ADJUSTMENTS

12.     The government and the defendant agree that the following adjustment to the base offense level does apply:

  a.      the 3-level increase pursuant to Guidelines § 3B1.1(b) (aggravating role in offense).

## COUNT 2
## ADJUSTED OFFENSE LEVEL

13.     Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offense of conviction is 39.

## COMBINED ADJUSTED OFFENSE LEVEL

14.     Based on ¶¶ 6 through 13 of this agreement and Guidelines §§ 3D1.2(c) and 3D1.2(b), it is the understanding of the government and the defendant that the defendant's combined adjusted offense level is 39.

## ACCEPTANCE OF RESPONSIBILITY

15.     At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level decrease of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one (1) level decrease of Guidelines § 3E1.1(b), which would result in a total offense level of 36.

## CRIMINAL HISTORY CATEGORY

16.     It is the understanding of the government and the defendant that the defendant's criminal history category is I. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the pleas of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

17.     It is the understanding of the government and the defendant that, with a total offense level of 36 and criminal history category of I, the defendant's sentencing range would be a term of imprisonment of 188 to 235 months, a fine of $40,000 to $1,000,000, and a period

of supervised release of 3 to 5 years.  Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

18.     The government and the defendant agree to the correctness of the calculation of the Sentencing Guidelines range set forth above.  The government and the defendant, however, reserve the right to recommend a sentence outside the Sentencing Guidelines range. This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

19.     The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the pleas of guilty based on the sentence imposed by the Court.

20.     In the event the Court contemplates any Guidelines adjustments, departures, or calculations different from those agreed to by the parties above, the parties reserve the right to answer any inquiries by the Court concerning the same.

## IV.     STATUTE OF LIMITATIONS

21.     In the event the defendant's pleas of guilty are withdrawn, or convictions vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense which

11

is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty pleas or vacating of the convictions becomes final.

## V.   REMOVAL

22.     The defendant represents that she is a citizen of the United States. However, if the defendant is not a citizen of the United States, the defendant understands that, if convicted, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## VI.   GOVERNMENT RIGHTS AND OBLIGATIONS

23.     The defendant understands that the government has reserved the right to:

a.      provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b.      respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c.      advocate for a specific sentence consistent with the terms of this agreement, including the amount of restitution and/or a fine and the method of payment;

d.      modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor; and

e.      oppose any application for a downward departure and/or sentence outside the Guidelines range made by the defendant.

12

24.     At sentencing, the government will move to dismiss the Criminal Complaint pending against the defendant under Magistrate's No. 21-mj-5134.

25.     The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the government for use in the collection of any unpaid financial obligation.

## VII.    RESTITUTION AND FINANCIAL PENALTY PROVISIONS

26.     Pursuant to Title 18, United States Code, Section 3663(a)(3), the parties agree that the Court shall require restitution to the victims listed in Appendix A in the amounts indicated, as part of the defendant's sentence.  The defendant understands that defendant will not be entitled to withdraw the pleas of guilty based upon any restitution amount ordered by the Court.

27.     The defendant agrees that the defendant will not oppose bifurcation of the sentencing hearing under 18 U.S.C. § 3664(d)(5) if the victims' losses are not ascertainable prior to sentencing.

28.     The defendant agrees to fully and completely disclose all assets in which the defendant either has any property interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.  The defendant agrees to make complete financial disclosure to the government by truthfully executing a sworn financial statement by the deadline set by the government, or if no deadline is set, no later than two weeks prior to the date of sentencing.  The defendant agrees to

13

authorize the release of all financial information requested by the government, including, but not limited to, executing authorization forms for the government to obtain tax information, bank account records, credit history, and social security information. The defendant agrees to discuss or answer any questions by the government relating to the defendant's complete financial disclosure. The defendant will submit to an examination under oath and/or a polygraph examination conducted by an examiner selected by the government on the issue of the defendant's financial disclosures and assets, if deemed necessary by the government. The defendant certifies that the defendant has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by the agreement and/or that may be imposed upon the defendant by the Court. In addition, the defendant promises that the defendant will make no such transfers in the future.

29.     The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the government for use in the collection of any unpaid financial obligation.

30.     The defendant understands and agrees that the Court, at the time of sentencing, will order that all monetary penalties imposed at that time (including any fine, restitution, or special assessment imposed in accordance with the terms and conditions of this plea agreement) are to be due and payable in full immediately and will be (i) subject to immediate enforcement as provide for in 18 U.S.C. Section 3613, and (ii) submitted to the Treasury Offset Program (TOP) so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts but will not affect any periodic payment schedule set by the Court.

14

31.     The defendant understands and acknowledges that any schedule of payments imposed by the Court at the time of sentencing is merely a minimum schedule of payments and does not, in any way, limit those methods available to the government to enforce the judgment.

32.     The defendant agrees that any funds and assets in which the defendant has an interest, which have been seized or restrained by the government or law enforcement as part of the investigation underlying this plea agreement, and not subject to forfeiture, will be used to offset any judgment of restitution and fine imposed pursuant to this plea agreement, or to satisfy any debts owed by the defendant to the government and/or agencies thereof.

33.     To the extent that the defendant has an interest, the defendant authorizes the District Court Clerk to release any funds posted as security for the defendant's appearance bond in this case, which funds shall be applied to satisfy the financial obligation(s) of the defendant pursuant to the judgment of the Court.

34.     The defendant is aware that voluntary payment of restitution prior to adjudication of guilt is a factor in considering whether the defendant has accepted responsibility under the United States Sentencing Guidelines §3El.1.

## VIII.   APPEAL RIGHTS

35.     The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed.  The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 17, above, notwithstanding the manner in which the Court determines the sentence.  In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

36.     The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence if, in the future, the defendant becomes aware of previously unknown facts or a change in the law that the defendant believes would justify a decrease in the defendant's sentence.

37.     The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine, and supervised release set forth in Section III, ¶ 17, above, notwithstanding the way the Court determines the sentence.  However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## IX.   FORFEITURE PROVISIONS

### Money Judgment

38.    As a condition of this plea agreement, the defendant agrees to immediately criminally forfeit all of the defendant's right, title and interest to any and all property which is subject to forfeiture pursuant to Title 18, United States Code, Sections 981, 982 and Title 28, United States Code, Section 2461(c), which the defendant obtained from her offenses that are the subject of this plea agreement that are in the possession and control of the defendant or the defendant's nominees.  That property includes but is not limited to the following:

**MONETARY AMOUNT:**

a. The sum of approximately Thirty-one Million Nine Hundred Seventy-Three Thousand Five Hundred Thirty-Five Dollars and Fifty Cents ($31,973,535.50) in United States currency as representing proceeds the defendant obtained from her involvement in the criminal conduct, which if not readily available will become a monetary judgment and will serve as a lien against the defendant's property, wherever situated, with interest to accrue at the prevailing rate per annum until fully satisfied in the event this amount is not located.

b. The defendant understands and agrees that a forfeiture money judgment will be due and payable in full immediately and subject to immediate enforcement by the government.  The defendant agrees that any funds and assets in which the defendant has an interest, which have been seized or restrained by the government or law enforcement as part of the investigation underlying this plea agreement, will be used to offset any forfeiture money judgment imposed pursuant to this plea agreement, or to satisfy any debts owed by the defendant to the government and/or agencies thereof.   To the extent that the defendant has an interest, the defendant authorizes the District Court Clerk to release any funds posted as security for the defendant's appearance bond in this case, which funds shall be applied to satisfy the criminal forfeiture judgment.

c. In lieu of forfeiture of the premises, buildings and appurtenances, improvements and real property located at 1800 Tyler Street, Altus, Oklahoma, more fully described in a deed recorded in the Jackson County Clerk's Office, State of Oklahoma, on August 13, 3020 in Book 1211 at Page 00019, the defendant or her assigns will forfeit the sum of $118,458 United States currency to be paid within four months from the date of the plea hearing, said amount to be tendered by means of a certified or bank draft payable to the United States Marshals Service or by wire transfer in accordance with the direction of the

government. In the event that this payment is not made to the government within four months of the plea hearing, the government will move to forfeit the premises, buildings and appurtenances, improvements and real property located at 1800 Tyler Street, Altus, Oklahoma, more fully described in a deed recorded in the Jackson County Clerk's Office, State of Oklahoma, on August 13, 3020 in Book 1211 at Page 00019.

d. In lieu of forfeiture of the premises, buildings and appurtenances, improvements and real property located at 816 Village Drive, Altus, Oklahoma, more fully described in a deed recorded in the Jackson County Clerk's Office, State of Oklahoma, On August 3, 2020, in Book 1211 at Page 000886, the defendant or her assigns will forfeit the sum of $164,149.44 United States currency to be paid within four months from the date of the plea hearing, said amount to be tendered by means of a certified or bank draft payable to the United States Marshals Service or by wire transfer in accordance with the direction of the government. In the event that this payment is not made to the government within four months of the plea hearing, the government will move to forfeit the premises, buildings and appurtenances, improvements and real property located at 816 Village Drive, Altus Oklahoma, more fully described in a deed recorded in the Jackson County Clerk's Office, State of Oklahoma, on August 31, 2020 in Book 1211 at Page 000886.

e. In lieu of forfeiture of a 2020 Ford Expedition, last four of the VIN 6275, located Altus, Oklahoma, 73521, the defendant or her assigns will forfeit the sum of $61,744.52 United States currency to be paid within four months from the date of the plea hearing, said amount to be tendered by means of a certified or bank draft payable to the United States Marshals Service or by wire transfer in accordance with the direction of the government. In the event that this payment is not made to the government within four months of the plea hearing, the government will move to forfeit the 2020 Ford Expedition, last four of the VIN 6275, located Altus, Oklahoma, 73521.

f. In lieu of forfeiture of a 2020 Ford F-250, last four of the VIN 0477, located Altus, Oklahoma, 73521, the defendant or her assigns will forfeit the sum of $76,945 United States currency to be paid within four months from the date of the plea hearing, said amount to be tendered by means of a certified or bank draft payable to the United States Marshals Service or by wire transfer in accordance with the direction of the government. In the event that this payment is not made to the government within four months of the plea hearing, the government will move to forfeit the 2020 Ford F-250, last four of the VIN 0477.

g. In lieu of forfeiture of a 2021 Ford Explorer last four of the VIN 1865, located Altus, Oklahoma, 73521, the defendant or her assigns will forfeit the sum of $43,755 United States currency to be paid within four months from the date of the plea hearing, said amount to be tendered by means of a certified or bank draft payable to the United States Marshals Service or by wire transfer in

accordance with the direction of the government. In the event that this payment is not made to the government within four months of the plea hearing, the government will move to forfeit the 2021 Ford Explorer last four of the VIN 1865, located Altus, Oklahoma, 73521.

h. In lieu of forfeiture of a 2021 Ford F-150, last four of the VIN 0440, located Altus, Oklahoma, 73521, the defendant or her assigns will forfeit the sum of $58,610 United States currency to be paid within four months from the date of the plea hearing, said amount to be tendered by means of a certified or bank draft payable to the United States Marshals Service or by wire transfer in accordance with the direction of the government. In the event that this payment is not made to the government within four months of the plea hearing, the government will move to forfeit the 2021 Ford F-150, last four of the VIN 0440, located Altus, Oklahoma, 73521.39.  The defendant also agrees that the property listed above is properly forfeitable to the government pursuant to Title 18, United States Code, Sections 981, 982, and Title 28, United States Code, Section 2461(c), and based upon the acts of the defendant, it is no longer available for forfeiture pursuant to the provisions of Section 853(p) of Title 21, United States Code and thus the government has the right to seek forfeiture of substitute assets of the defendant.  The defendant further agrees to fully assist the government in the identification and recover of any property subject to forfeiture, or of any property found by the government or surrendered by the defendant to satisfy such judgment and to take whatever steps are necessary to pass clear title to the government, including, but not limited to surrender of title and execution of any documents necessary to transfer the defendant's interest in any of property found to satisfy the judgment to the government, as deemed necessary by the government.

40.     After the acceptance of the defendant's guilty plea, and pursuant to Rule 32.2(b)(2) of the Federal Rules of Criminal Procedure, the Court will issue a Preliminary and Final Order of Forfeiture for the property set forth above.  The defendant hereby waives any right to notice of such Preliminary and Final Order of Forfeiture.  The defendant further consents and agrees that the Preliminary Order of Forfeiture and Final Order of Forfeiture shall issue and become final as to the defendant prior to sentencing and agrees that it shall be made part of the defendant's sentence and included in the judgment pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure.  The defendant further agrees to waive

any time restrictions or requirements as provided in Title 18, United States Code, Section 983, any notice provisions in Rules 32.2 and 43(a) of the Federal Rules of Criminal Procedure regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant acknowledges that the defendant understands that the forfeiture of property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise the defendant of this, pursuant to Rule 11(b)(1)(J) of the Federal Rules of Criminal Procedure, at the time the guilty plea is accepted.  Forfeiture of the defendant's property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

41.     The defendant knowingly, intelligently, and voluntarily waives her right to a jury trial on the forfeiture of the assets.  The defendant knowingly, intelligently, and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of these assets in any proceeding, including any jeopardy defense or claim of double jeopardy, whether constitutional or statutory, as to this criminal proceeding or any related civil or administrative proceeding.  The defendant further agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine regarding the forfeiture of assets by the government.

### Other Assets Held By Third Parties

42.     As a condition of the plea, the defendant further agrees not to contest any forfeiture proceedings that may be brought by the government if she fails to provide the

payments listed above to the government in the deadlines set forth in this agreement, and agrees to immediately forfeit all of the defendant's right, title and interest to any and all property and proceeds which are subject to forfeiture pursuant to Title 18, United States Code, Section 981, 982, Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), which the defendant obtained from her offenses that are the subject of this plea agreement that are in the possession and control of the defendant or the defendant's nominees.  That property includes but is not limited to the following:

**VEHICLES:**

a.   One 2020 Ford Expedition, VIN: 1FMJU1KT2LEA46275;

b.   One 2020 Ford F-250, VIN: 1FT7W2BT7LEC70477;

c.   One 2021 Ford Explorer, VIN: 1FMSKZDH5MGB31865; and

d.   One 2021 Ford F-150, VIN: 1FTFW1E83MKD90440.

**REAL PROPERTY:**

a.   The premises, buildings, appurtenances, improvements, and real property located at 1800 Tyler Street, Altus, Oklahoma, more fully described in a deed recorded in the Jackson County Clerk's Office, State of Oklahoma, on August 13, 3020 in Book 1211 at Page 00019; and

b.   The premises, buildings, appurtenances, improvements, and real property located at 816 Village Drive, Altus, Oklahoma, more fully described in a deed recorded in the Jackson County Clerk's Office, State of Oklahoma, on August 31, 2020 in Book 1211 at Page 000886.

43.   The defendant agrees that if any of the property described above, as a result of any act or omission of the defendant, or the defendant's nominees, cannot be located, has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; the government shall be

entitled to forfeiture of substitute property of the defendant pursuant to Title 21, United States

Code, Section 853(p).


### X.    TOTAL AGREEMENT AND AFFIRMATIONS

This plea agreement represents the total agreement between the defendant, **AMANDA J.**

**GLORIA**, and the government.  There are no promises made by anyone other than those

contained in this agreement.  This agreement supersedes any other prior agreements, written

or oral, entered into between the government and the defendant.

TRINI E. ROSS
United States Attorney
Western District of New York

JOSEPH S. BEEMSTERBOER
Acting Chief, Fraud Section
Criminal Division
United States Department of Justice

BY:  _____

LAURA A. HIGGINS
Assistant United States Attorney

_____
CORY E. JACOBS
Assistant Chief
JENNIFER L. BILINKAS
Trial Attorney

Dated:  April 5 , 2022

Dated:  April 5 , 2022

I have read this agreement, which consists of pages 1 through 23. I have had a full opportunity to discuss this agreement with my attorney, Andrew Brautigam, Esq. I agree that it represents the total agreement reached between me and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____
AMANDA J. GLORIA
Defendant

Dated: April 6, 2022

_____
ANDREW BRAUTIGAM, ESQ.
Attorney for the Defendant

Dated: April 6, 2022

23